**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CLIFTON CRAWFORD,**

         **Plaintiff,**

 vs.                **9:16-cv-252**
                     **(MAD/ATB)**

**D. KELLEY,** *Correctional Officer,*
*Mohawk Correctional Facility,*

         **Defendant.**
_____

**APPEARANCES:**        **OF COUNSEL:**

**CLIFTON CRAWFORD**
**89-A-3964**
Mohawk Correctional Facility
P.O. Box 8450
Rome, New York 13440
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**    **LYNN M. KNAPP BLAKE, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 2, 2016, Plaintiff *pro se* Clifton Crawford ("Plaintiff") commenced the present action, pursuant to 42 U.S.C. § 1983, against that Defendant D. Kelley ("Defendant"), a correctional officer. *See* Dkt. No. 3. On March 31, 2016, this Court dismissed all claims except two—that Defendant forced Plaintiff to work with dangerous chemicals without training or protection and that Defendant forced Plaintiff to work outdoors in harsh weather without adequate clothing, both of which would constitute unsafe conditions under the Eighth Amendment. *See*

Dkt. No. 7. Plaintiff seeks substantial monetary relief. On March 28, 2017, Defendant moved for summary judgment on both claims. *See* Dkt. No. 21. In an October 27, 2017 Report-Recommendation, Magistrate Judge Baxter recommended that the Court grant the motion. *See* Dkt. No. 32. On November 13, 2017, Plaintiff filed objections to Magistrate Judge Baxter's Report-Recommendation. *See* Dkt. No. 33.

Currently before the Court is Magistrate Judge Baxter's Report-Recommendation recommending that the Court grant summary judgment for Defendant and Plaintiff's objections.

## II. BACKGROUND

### A. Plaintiff's Porter Work

On January 26, 2015, Plaintiff was assigned to work as a Supply Porter at Mohawk Correctional Facility. *See* Dkt. No. 28-3 at 2. Part of Plaintiff's porter duties required him to work out of the caustic supply room (the "Supply Room"), an approximately 27 by 17 foot room[1] that stored all caustic supplies. *See id.* at 4; Dkt. No. 21-4 at ¶ 11. Plaintiff worked from 8:00 a.m. to 11:00 a.m., five days per week. *See* Dkt. No. 28-3 at 3-4. After completing their assigned work, porters would wait in the Supply Room until the end of their shift. *See id.* at 4. Most of the porters' work was delivering cleaning supplies from the Supply Room to other parts of the prison. *See id.* at 2-3. These deliveries required going outside, and Plaintiff claims that he was not provided proper clothing to deal with that winter's intense cold and deep snow. *See id.* at 38-59.

On two Wednesdays per month, Plaintiff was required to work with Austin's A-1 Bleach (the "Bleach"), Corcraft Wax Remover ("Corcraft"), and Green Line Bathroom Cleaner Concentrate ("Green Line"). *See* Dkt. No. 28-3 at 2-3, 24, 26. Porters were not supplied with

---

[1] Defendant claims that the dimensions of the room are 30 by 50 feet. Dkt. No. 21-4 at ¶ 11. However, an affidavit from Plaintiff's co-worker asserts that the room was significantly smaller. Dkt. No. 28-3 at 4.

2

respirators to protect them from fumes while working. *See id.* at 3. Inmates could smell the caustic chemicals while in the room, even when they were not working with the chemicals, and believed that the ventilation was "woefully inadequate." *Id.* The Supply Room had a small window, a ventilation fan, and the door was required to be left open, both to allow ventilation and for security purposes. *See* Dkt. No. 21-4 at ¶ 11.

Plaintiff had previously worked as a porter and had documentation certifying that he had been trained in 2010 to work with the chemicals for the porter job. *See* Dkt. No. 28-3 at 35. Plaintiff claims that the form was blank when he signed it and was filled out afterwards. *See id.*

Soon after starting, Plaintiff began experiencing eye irritation and difficulty breathing. *See id.* at 5. Plaintiff approached Defendant, his supervisor, and "explained . . . due to [his] medical problems, . . . [he] wouldn't be able to" work there. *Id.* Defendant told him that his job was "whatever [I] tell you." *Id.* Plaintiff went to sick call and was given a medical notification exempting him from working with caustic materials. *See* Dkt. No. 21-4 at ¶¶ 21-22. As a result of the note, Plaintiff was removed from his porter assignment on February 19, 2015. *See id.* at ¶ 23. In February 2016, Plaintiff had surgery to remove his cataracts. *See* Dkt. No. 28-3 at 13.

**B.  Magistrate Judge Baxter's Report-Recommendation**

Magistrate Judge Baxter analyzed Plaintiff's unsafe conditions claims using the two prong test set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994). The first prong is objective—the plaintiff must show that he was incarcerated under conditions which posed a substantial risk of serious harm. *See id.* at 834. The second prong is subjective—the plaintiff must show that the prison official acted with deliberate indifference to his health and safety. *See id.* Magistrate Judge Baxter concluded that both claims failed the objective and subjective prongs of the *Farmer* test.

First, Magistrate Judge Baxter concluded that the chemicals Plaintiff worked with did not

3

`Case 9:16-cv-00252-MAD-ATB   Document 35   Filed 03/26/18   Page 4 of 9`

pose a substantial risk of serious harm. The fact that Plaintiff eventually had cataract surgery was not in itself indicative that the chemicals caused or aggravated the problem, let alone evidence that the chemicals create a substantial risk of eye damage. With respect to the subjective prong, Magistrate Judge Baxter found that the record did not support a triable question of fact that Defendant was aware of any risk. Thus, Defendant could not be found to have been deliberately indifferent.

Similarly, Magistrate Judge Baxter found that Plaintiff's weather exposure claim failed both prongs of the *Farmer* test. Because Plaintiff was wearing some form of outerwear for the duration of his exposure, he was not subjected to any substantial risk. Further, Magistrate Judge Baxter concluded that Defendant was not responsible for acquiring additional clothing, and as such, was not deliberately indifferent.

### III. DISCUSSION

**A.     Standard of Review**

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004).

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion,

the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

Moreover, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, at *1 (S.D.N.Y. May 16, 2001)).

**B.    Chemical Exposure Objections**

*1. Objective Prong*

Plaintiff has raised three issues with Magistrate Judge Baxter's objective analysis of the chemical exposure claim. First, Plaintiff notes that he was given medical leave by a nurse, not a

5

physician. *See* Dkt. No. 33 at 1. Regardless of whether this correctly characterizes Magistrate Judge Baxter's Report-Recommendation, the exact person that gave Plaintiff leave from his job is immaterial to the objective prong analysis because it has no bearing on the seriousness of the risk.

Plaintiff also claims there is a triable question of fact as to whether the chemicals could have accelerated his need for cataract surgery. Plaintiff claims that there is support in the record that links the chemicals in the Supply Room to his cataract surgery because eye damage or irritation was a hazard listed on each chemical's Material Safety Data Sheet (the "MSDS"). *See* Dkt. No. 33 at 2.

However, although direct exposure to the three chemicals in their liquid state could cause eye irritation, *see* Dkt. No. 28-3 at 21, 25-26, the record is devoid of any indication that the chemicals made contact with Plaintiff's eyes. Further, the record contains no indication that the chemicals' fumes or vapors presented any substantial risk of eye damage. The Bleach's handling instructions only required chemical splash goggles for eye protection. *Id.* at 20. "[S]uitable respiratory equipment" was only needed to use the Bleach without adequate ventilation and a "full facepiece" was only required "in the event of fire." *Id.* The need for splash goggles, and not a full facepiece, demonstrates that the risk to Plaintiff's eyes from the Bleach was from liquid, not gaseous, contact. Similarly, Corcraft's MSDS only required splash-proof goggles, cautioning an individual using it to "not get in eyes, on skin, or on clothing . . . [and to a]void breathing vapor or mist." *Id.* at 25. This again indicates the risk to Plaintiff's eyes was from liquid, not gaseous, exposure. Finally, there was no risk from Green Line vapors because Green Line has a "low vapor pressure" making gaseous exposure "unlikely at standard temperatures and pressures." *Id.* at 26. As such, Magistrate Judge Baxter was correct to conclude that there was no causal nexus between Plaintiff's exposure to these chemicals and his subsequent cataract surgery.

Plaintiff's third objection to the objective analysis is that Magistrate Judge Baxter's finding

6

that Plaintiff was only exposed to the chemicals for a short duration was not supported by the record. *See id.* at 2-3. However, Magistrate Judge Baxter reached this conclusion based on the affidavit of Reginald Rabb, one of Plaintiff's co-workers, which stated that Plaintiff's job only involved direct work with the supposedly harmful chemicals on two Wednesdays a month. *See* Dkt. No. 28-3 at 2. As Plaintiff only worked as a porter between January 26, 2015, and February 19, 2015, he only worked with the chemicals during two or three shifts. *See id.* at 2, 11. Therefore, there was a sufficient basis in the record for Magistrate Judge Baxter's conclusion.

### *ii. Subjective Prong*

Plaintiff's objections to Magistrate Judge Baxter's subjective prong analysis is that Defendant was incorrect in believing Plaintiff could safely work with the chemicals. *See* Dkt. No. 33 at 3-6. Plaintiff argues that Defendant was incorrect that Plaintiff had prior experience in working with these chemicals, that the work did not require safety equipment, and that an inmate who experienced eye irritation or breathing trouble would be sent to sick call. *See id.*

The subjective prong of the deliberate indifference test is satisfied if the defendant "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Aside from direct evidence, a plaintiff can satisfy this burden by showing that the risk is "so obvious that a jury may reasonably infer actual knowledge on the part of the defendants sufficient to satisfy the subjective component of the deliberate indifference standard." *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004) (citing *Farmer*, 511 U.S. at 842).

Here, Plaintiff claims that Defendant's bases for believing that Plaintiff was not at risk were based on objectively incorrect information. While there is a dispute of fact as to whether Defendant's beliefs were actually correct, the record does not establish that Defendant's beliefs were so obviously incorrect or that the risk was so obvious that Defendant would have had reason

to believe that Plaintiff faced a substantial risk of serious harm.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly determined that the Court should grant Defendant's motion for summary judgment as to this claim.

**C.     Insufficient Clothing Claim**

Plaintiff objects to Magistrate Judge Baxter's credibility determination, made under *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), that disregarded Plaintiff's claim that Plaintiff believed that Defendant was responsible for obtaining winter clothing.  Under *Jeffreys*, a district court may make a credibility determination "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete."  *Id.*  Plaintiff argues that Magistrate Judge Baxter overlooked the affidavit of Reginald Rabb and Plaintiff's sixty-six pages of exhibits which contain support for his position. *See* Dkt. No. 33 at 7.  Plaintiff also objects to the characterization of his testimony as being contradictory and incomplete.  *See id.*

After reviewing the record, the Court can find nothing within Plaintiff's submissions that support his assertion that he was unaware of the proper procedure to requisition additional clothing other than his own testimony.  Further, while Plaintiff challenges Magistrate Judge Baxter's conclusion that his testimony was contradictory and incomplete, Plaintiff's testimony was inconsistent with Roxanne Labelle-Fischer's declaration that he had previously used the prison requisition system for clothing.  In fact, Plaintiff received an additional pair of underwear in January of 2015 and a winter coat in February of 2015.

As such, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff's own self-serving and inconsistent testimony, that was otherwise contradicted by other evidence in the record, is insufficient to survive summary judgment.  Accordingly, the Court grants Defendant's motion for summary judgment as to this claim.

## IV. CONCLUSION

Having reviewed Magistrate Judge Baxter's October 27, 2017 Report-Recommendation, the record and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 32) is **ADOPTED** for the reasons stated therein; and the Court further

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 21) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 26, 2018
       Albany, New York

Mae A. D'Agostino
U.S. District Judge